SCOTT+SCOTT LLP
ARTHUR L. SHINGLER III (181719)
MARY K. BLASY (211262)
600 B Street, Suite 1500
San Diego, CA 92101
Telephone: 619/233-4565
619/233-0508 (fax)
ashingler@scott-scott.com
mblasy@scott-scott.com
– and –
DAVID R. SCOTT
P.O. Box 192
108 Norwich Avenue
Colchester, CT 06415
Telephone: 860/537-3818
860/537-4432 (fax)
drscott@scott-scott.com

Counsel for Plaintiff

E-filing

FILED

AUG 25 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CRB

WESTMORELAND COUNTY RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

BARE ESCENTUALS, INC., LESLIE A. BLODGETT, MYLES B. MCCORMICK, ROSS M. JONES, BRADLEY M. BLOOM, JOHN C. HANSEN, MICHAEL J. JOHN, LEA ANNE OTTINGER, KAREN M. ROSE, GLEN T. SENK, GOLDMAN SACHS GROUP, INC., CIBC WORLD MARKETS, BANC OF AMERICA SECURITIES LLC, PIPER JAFFRAY COMPANIES, THOMAS WEISEL PARTNERS LLC, and SUNTRUST ROBINSON HUMPHREY, INC., F/K/A SUNTRUST CAPITAL MARKETS, INC.,

Defendants.

Civil Action No. CV 09 3924

CLASS ACTION

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

1. Plaintiff, Westmoreland County Retirement System ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Bare Escentuals, Inc. ("Bare Escentuals" or the "Company"), as well as media reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

2. This is a securities class action against Bare Escentuals, certain of its current and former directors and executives, and its investment bankers (collectively, the "Defendants") for violations of the Securities Act of 1933 (the "Securities Act") and violations of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff brings the Securities Act claims on behalf of itself and all other purchasers of Bare Escentuals' common stock issued pursuant and/or traceable to the false and misleading Registration Statements and Prospectus filed with the SEC by Bare Escentuals in connection with the Company's September 28, 2006 initial public offering of 18.4 million shares at $22 per share for proceeds of $404.8 million (the "IPO") and the Company's March 14, 2007 follow-on offering of 13.8 million shares at $34.50 per share for proceeds of $476.1 million (the "March 2007 Offering"). The Securities Act claims involve solely ***strict liability*** and negligence claims. Plaintiff brings the Exchange Act claims on behalf of itself and all other purchasers of Bare Escentuals' common stock between September 28, 2006 and October 31, 2008 (the "Class Period") and who were damaged thereby.

## SUMMARY OF THE ACTION

3. Defendant Bare Escentuals describes itself as "one of the leading prestige cosmetic companies in the United States and an innovator in mineral-based cosmetics." The Company develops, markets and sells branded cosmetics and skin care products primarily under its bareMinerals, RareMinerals, Buxom and md formulations brands worldwide utilizing what it characterizes as a "distinctive marketing strategy and a multi-channel distribution model utilizing

traditional retail distribution channels consisting of premium wholesale, including Sephora, Ulta and selected department stores; company-owned boutiques; and spas and salons; as well as direct to consumer distribution channels consisting of home shopping television on QVC; infomercials; and online shopping." The Company also sells products to distributors who resell it.

4. The Bare Escentuals brand dates back to the opening of its first boutique in 1976, but the brand and its sales really took off following the introduction of its infomercials in 2001. By 2002, consumers worldwide had flocked to try the cosmetic phenomenon known as bare mineral powder makeup. Women around the world viewed firsthand the cosmetic television infomercial evolution, beginning the mineral makeup boom and increasing Bare Escentuals' sales five-fold, from $25 million a year to over $250 million a year by the commencement of the IPO. Mineral makeup products peaked in 2008 when almost all worldwide cosmetic companies including Estée Lauder, M.A.C. Cosmetics, and L'Oreal Cosmetics had introduced their versions of mineral type makeup.

5. However, by 2009, studies demonstrated only an estimated 25% of women shoppers had ventured to try mineral makeup samples or full size makeup products. The low percentage of consumers using mineral makeup resulted in part from the mess loose powder product spills posed. Cosmetic companies are also forced to put out new products every three months and maintain sales prices and levels, but Bare Escentuals could effectively sell just one product. Moreover, in response to the boon that Bare Escentuals had created temporarily through the infomercials, several cosmetic companies had formulated creams, liquids, and pressed mineral makeup products to address the spillage problem, and were offering these products at prices considerably less than Bare Escentuals. Furthermore, a significant portion of Bare Escentuals' earlier stellar infomercial sales revenues was dependent upon unwittingly signing up customers for "club" deals where their credit cards were later billed for multiple shipments beyond their initial orders without their knowledge or consent. While Bare Escentuals was able to capture and report several years worth of phenomenal premium sales leading up to its September 2006 IPO, profits would grow lean in the following years as the Company's attempts to rehabilitate its infomercial sales program and to cross-sell other products failed.

6. Meanwhile, in June 2004, the Company had undergone a series of "recapitalizations" in which affiliates of Berkshire Partners LLC, a Boston-based private investment firm ("Berkshire Partners"), JH Partners, LLC, a San Francisco-based private equity firm ("JH Partners"), and certain members of the Company's management, acquired a majority controlling interest in Bare Escentuals. On June 10, 2004, Bare Escentuals entered into management agreements with Berkshire Partners and JH Partners. In the June 2004 recapitalization, the Company incurred approximately $100 million of new indebtedness, raised approximately $87.5 million of new equity financing and used $169.6 million to repurchase outstanding shares of capital stock and fully-vested options. Stockholders who controlled a majority voting interest prior to the June 2004 recapitalization retained shared control of Bare Escentuals' outstanding capital stock immediately following the June 2004 recapitalization. Berkshire Partners would control 46.8% of the Company's stock and appoint two directors to the Company's Board, including Bare Escentuals' Chairman of the Board, Ross M. Jones ("Jones"), and JH Partners would control another 31.6% of Bare Escentuals' stock and appoint two members of the Bare Escentuals Board.

7. While the Company's sales revenues were soaring, in February 2005, the Company borrowed another $224.5 million to repay $92.6 million of its existing debt and to pay a special dividend to stockholders of $122.4 million. Again in October 2005, the Company borrowed another $187.5 million to pay a special dividend to stockholders of $183.5 million. In June 2006, the Company again borrowed another $331.6 million to pay a special dividend to stockholders of $340.4 million. Finally, in September 2006, the Company completed its IPO in order to repay the outstanding indebtedness and to buy out the management agreements with Berkshire Partners and JH Partners.

8. In March 2007, Bare Escentuals, Berkshire Partners, certain of the Company's executives and several other "Selling Stockholders" went back to the capital markets again. Bare Escentuals issued and offered another 575,000 shares, receiving $19.8 million in gross proceeds, and the other Selling Stockholders, including Bare Escentuals' Chief Executive Officer Leslie A. Blodgett ("Blodgett"), sold an additional 13,225,000 of previously-issued shares, receiving $456+ million in gross proceeds. For its part, on April 3, 2007, Bare Escentuals acquired U.K.-based

Cosmeceuticals Limited, which distributes Bare Escentuals' products to spas and salons, QVC U.K. and certain department stores in the U.K. and Ireland, for $23.1 million.

9. As Defendants would later admit, the Registration Statements issued by Defendants in connection with the IPO and the March 2007 Offering were false when filed with and declared effective by the SEC. Defendants have now admitted that the Registration Statements were false and misleading in that they misrepresented and/or failed to disclose, among other things, that: (i) the Company's "premium" product image was being diluted by sales its distributors were facilitating through discounters like Costco; (ii) the Company's efforts to revitalize its infomercial sales and to cross-sell were failing; and (iii) the Company's past reliance on "club" deal sales revenues from its infomercials was diminishing as consumers refused to permit unwanted additional shipments to be billed to their credit cards.

10. Plaintiff and the other members of the Class have suffered hundreds of millions of dollars in damages as a result of their purchase of Bare Escentuals' common stock in the IPO and March 2007 Offering, and in the Class Period following those offerings. As the truth about Bare Escentuals and its financial operations reached the market, including management's October 31, 2008 announcement that it would be forced to slash prices and cut the Company's financial guidance going forward, the price of the Company's common stock plummeted to as low as $4.20 per share in intraday trading, almost 80% below the IPO price and more than 87% below the March 2007 Offering price.

**JURISDICTION AND VENUE**

11. The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77k, 77l(a)(2) and 77o and §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

12. Jurisdiction is conferred by §22 of the Securities Act and §27 of the Exchange Act and venue is proper in this District pursuant to §22 of the Securities Act, §27 of the Exchange Act, 28 §1391(b) and 28 U.S.C. §1331.

13. The violations of law complained of herein occurred in substantial part in this District, including the preparation and dissemination of materially false and misleading statements and the omission of material information complained of herein. Bare Escentuals maintains its principal place of business in San Francisco, California, where many of the underwriter Defendants maintain significant presences as well. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

14. Plaintiff Westmoreland County Retirement System purchased the Company's common stock pursuant and traceable to the IPO and March 2007 Offering Registration Statements and has suffered damages as a result thereof.

15. Defendant Bare Escentuals, headquartered in San Francisco, California, develops, markets, and sells cosmetics, and skin care and body care products under bareMinerals, RareMinerals, Buxom, and md formulations brands.

16. Defendant Blodgett has served as the Chief Executive Officer and a Director of Bare Escentuals since 1995. Blodgett signed the false and misleading IPO and March 2007 Offering Registration Statements and certified each of the false and misleading Class Period financial statements filed with the SEC pursuant to the Sarbanes-Oxley Act of 2002. Blodgett also sold 1,220,187 shares of Bare Escentuals stock beneficially held by her and her family in the March 2007 Offering, receiving over $42 million in proceeds, and made tens of millions of dollars worth of other Class Period sales of her Bare Escentuals holdings.

17. Defendant Myles B. McCormick ("McCormick") has served as Executive Vice President, Chief Financial Officer of Bare Escentuals since December 2004, and as Chief Operations Officer of Bare Escentuals since March 2006. McCormick signed the false and misleading IPO and March 2007 Offering Registration Statements and certified each of the false and misleading Class Period financial statements filed with the SEC pursuant to the Sarbanes-Oxley Act of 2002.

18. Defendant Jones has served as a Director and Chairman of the Board of Bare Escentuals since June and July of 2004, respectively. Jones is also a managing director of Berkshire Partners which he joined in 1993. Jones became a managing director of Berkshire Partners LLC in 2000 and is or has been a director of several of Berkshire Partners LLC's consumer, retailing, manufacturing, and business services companies including Carter's, Inc., a public company, and the private companies N.E.W. Customer Service Companies, Inc., Waterworks, Inc., AVW-TelAv Inc., Sterling Collision Centers, Inc., and Thomas Built Buses, Inc., now a division of the public company Daimler Chrysler, AG. Jones signed the false and misleading IPO and March 2007 Offering Registration Statements and each of the Company's 2006, 2007 and 2008 annual reports to shareholders.

19. Defendant Bradley M. Bloom ("Bloom") has served as a Director of the Board of Bare Escentuals since June 2004. Bloom is also a managing director of Berkshire Partners, which he co-founded in 1986. He has been a director of several of Berkshire Partners' consumer and retailing companies including Carter's, Inc., a public company, and the private companies Acosta, Inc., Gordon Brothers Group, Sterling, Inc., America's Best Contacts and Eyeglasses, L.P., and Miami Cruiseline Services Holdings I.B.V. Bloom signed the false and misleading IPO and March 2007 Offering Registration Statements and each of the Company's 2006, 2007 and 2008 annual reports to shareholders.

20. Defendant John C. Hansen ("Hansen") has served as a Director of the Board of Bare Escentuals since June 2004 and served on the boards of each of Bare Escentuals' predecessor companies, md formulations and Bare Escentuals, since 1999 and 1990, respectively. Since March 1998, Hansen has also served as President of JH Partners, a private equity firm formerly known as Jesse.Hansen&Co. which received significant proceeds from the IPO. Hansen signed the false and misleading IPO and March 2007 Offering Registration Statements and each of the Company's 2006, 2007 and 2008 annual reports to shareholders.

21. Defendant Michael J. John ("John") has served as a Director of the Board of Bare Escentuals since November 2005. Since April 2004, John has also served as a senior partner of JH

Partners. John signed the false and misleading IPO and March 2007 Offering Registration Statements and each of the Company's 2006, 2007 and 2008 annual reports to shareholders.

22. Defendant Lea Anne Ottinger ("Ottinger") has served as a Director of the Board of Bare Escentuals since June 2004. Ottinger signed the false and misleading IPO and March 2007 Offering Registration Statements and each of the Company's 2006, 2007 and 2008 annual reports to shareholders. Ottinger also sold 33,711 shares in the March 2007 Offering, receiving over $1.1 million in proceeds.

23. Defendant Karen M. Rose ("Rose") has served as a Director of the Board of Bare Escentuals since May 2006. Rose signed the false and misleading IPO and March 2007 Offering Registration Statements and each of the Company's 2006, 2007 and 2008 annual reports to shareholders.

24. Defendant Glen T. Senk ("Senk") has served as a Director of the Board of Bare Escentuals since November 2004. Senk signed the false and misleading IPO and March 2007 Offering Registration Statements and each of the Company's 2006, 2007 and 2008 annual reports to shareholders. Senk also sold 20,000 shares in the March 2007 Offering, receiving $690,000 in proceeds

25. Pursuant to the Securities Act, the Defendants referenced in ¶¶16-24 above are liable under the Securities Act as executives of Bare Escentuals and are referred to herein as the "Individual Defendants."

26. Defendant Goldman Sachs Group, Inc. ("Goldman Sachs") is a full-service global investment banking and securities firm. Goldman Sachs was an underwriter for both offerings and was allocated over 5.6 million shares to sell in the IPO and over 4.8 million shares in the March 2007 Offering.

27. Defendant CIBC World Markets Corp. ("CIBC World Markets") offers credit and capital markets products, securities, brokerage and asset management services. CIBC World Markets was an underwriter for both offerings and was allocated over 4.8 million shares to sell in the IPO and over 3.6 million shares in the March 2007 Offering.

28. Defendant Banc of America Securities LLC ("Banc of America") is the investment banking arm of Bank of America. Banc of America offers trading and brokerage services; debt and securities underwriting; debt and equity research; and advice on public offerings, leveraged buyouts, and mergers and acquisitions. Banc of America was an underwriter for both offerings and was allocated over 1.6 million shares to sell in the IPO and over 1 million shares in the March 2007 Offering.

29. Defendant Piper Jaffray Companies ("Piper Jaffray") is an international middle market investment firm serving corporations, private equity groups, public entities, nonprofit clients and institutional investors. Piper Jaffray was an underwriter for both offerings and was allocated over 1.6 million shares to sell in the IPO and over 1 million shares in the March 2007 Offering.

30. Defendant Thomas Weisel Partners LLC ("Thomas Weisel") is an investment banking, brokerage and equity research firm serving emerging growth companies. Thomas Weisel Partners was an underwriter for both offerings and was allocated over 1.6 million shares to sell in the IPO and over 1 million shares in the March 2007 Offering.

31. Defendant SunTrust Robinson Humphrey, Inc., f/k/a SunTrust Capital Markets, Inc. ("SunTrust"), is the full-service corporate and investment banking arm of SunTrust Banks, Inc. Suntrust was an underwriter for both offerings and was allocated over 440,000 shares to sell in the IPO and 600,000 shares in the March 2007 Offering.

32. Pursuant to the Securities Act, the Defendants referenced in ¶¶26-31 above are liable for the false and misleading statements in the IPO and March 2007 Registration Statements and Prospectuses. In connection with these offerings, these Defendants drafted and disseminated the Registration Statements and were paid fees in connection therewith. These Defendants' failure to conduct adequate due diligence investigations was a substantial factor leading to the harm complained of herein. These Defendants are referred to herein as the "Underwriter Defendants."

**THE FALSE AND DEFECTIVE IPO REGISTRATION STATEMENT AND PROSPECTUS**

33. On or about June 30, 2006, Bare Escentuals filed with the SEC a Form S-1 Registration Statement and Prospectus (collectively, the "IPO Registration Statement/Prospectus").

After several amendments, the IPO Registration Statement/Prospectus was declared effective, the IPO was priced and on or about September 28, 2006, Bare Escentuals sold 18.4 million shares of its common stock to the public at $22.00 per share.

34. The IPO Registration Statement/Prospectus contained untrue statements of material fact or omitted to state other facts necessary to make the statements made therein not misleading and was not prepared in accordance with applicable SEC rules and regulations. Specifically, as to "Competitive Strengths," the IPO Registration Statement/Prospectus stated that "the following competitive strengths position [Bare Escentuals] for continued, sustainable growth in the future," including describing an "Enthusiastic and loyal consumer base." According to the IPO Registration Statement/Prospectus, Bare Escentuals' customers then "***exhibit[ed] brand loyalty and enthusiasm for [its] products, promoting sales of [its] products through word-of-mouth referrals and high rates of participation in our infomercial continuity program***." These statements attributing Bare Escentuals' "Competitive Strengths" to its customers' "brand loyalty," "enthusiasm," "word-of-mouth referrals," and "high rates of participation in [its] infomercial continuity program" were false and misleading as the exponential sales begotten by Bare Escentuals' infomercial program since its commencement in 2001 were attributable in large part to consumers being unwittingly entered as "club members" and subjected to repeated charges to their credit cards for purchases not initiated by them. [Emphasis added.]

35. The IPO Registration Statement/Prospectus also characterized the Company's sales program as "[m]utually reinforcing distribution channels," and stated that its "multi-channel distribution strategy provide[d] for greater consumer diversity, reach and convenience ***while reinforcing the authenticity and premium image of [the Company's] brands***." However, unbeknownst to investors, the Company was selling its product to distributors who in 2006 would begin reselling it at discount outlets like Costco, significantly diminishing the premium prices Bare Escentuals had previously been able to charge. [Emphasis added.]

36. Concerning the Company's "Growth Strategy," the IPO Registration Statement/Prospectus stated that Bare Escentuals intended to "continue to increase net sales through key ***premium wholesale accounts, such as Sephora and Ulta, home shopping television, and spas***

***and salons***," specifically stating that it might "explore additional opportunities to sell [its] products in ***premium department stores***." However, Costco and the other discounters Bare Escentuals' distributors were selling to, unbeknownst to investors, were not "premium department stores." [Emphasis added.]

37. Further emphasizing the purported value of its brand loyalty, the IPO Registration Statement/Prospectus stated the Company planned to "[l]everage [its] strong market position in foundation to cross-sell [its] other products," stating that "[t]o date, [the Company had] ***demonstrated success in cross-selling [its] non-foundation products*** in channels where [it] interact[ed] directly with consumers, such as in our boutiques and on home shopping television." In reality, as would later be revealed, Bare Escentuals' cross-selling efforts had failed. [Emphasis added.]

38. Nonetheless, the Underwriter Defendants' selling efforts were a huge success and the IPO, which had preliminarily been priced in the $15-$17 range was priced at $22 per share. The stock traded above $29 in the after-market on September 29, 2006. The 16 million shares originally issued for the IPO all sold as did the 2.4 million over-allotment shares the underwriters were promised. In total, the 18.4 million shares brought in over $404 million in proceeds and the underwriters received over $28 million in fees.

**THE FALSE AND DEFECTIVE MARCH 2007 OFFERING REGISTRATION STATEMENT AND PROSPECTUS**

39. On or about February 16, 2006, Bare Escentuals filed with the SEC a Form S-1 Registration Statement and Prospectus (collectively, the "March 2007 Offering Registration Statement/Prospectus"). After an additional amendment, the March 2007 Offering Registration Statement/Prospectus was declared effective, the offering was priced and on or about March 13, 2007, Bare Escentuals and the "Selling Stockholders" sold 13.8 million additional shares of Bare Esecentuals' common stock to the public at $34.50 per share. Bare Escentuals itself issued and sold 575,000 new shares of Bare Escentuals common stock in the March 2007 Offering. Additionally, the following Bare Escentuals shareholders (the "Selling Stockholders") sold another 13,225,000 shares in the March 2007 Offering at $34.50 per share:

| Shareholder | Number of Shares Offered | Proceeds Received |
| --- | --- | --- |
| Berkshire Partners | 6,315,116 | $ 217,871,502.00 |
| JH MDB Investors, L.P. and its affiliates | 2,929,533 | $ 101,068,888.50 |
| Siberia Investment Company, LLC | 1,341,184 | $ 46,270,848.00 |
| Blodgett and family | 1,220,187 | $ 42,096,451.50 |
| Ottinger | 33,711 | $ 1,163,029.50 |
| Senk | 20,000 | $ 690,000.00 |
| Other Selling Shareholders | 1,365,287 | $ 47,102,401.50 |

40. Like the IPO Registration Statement/Prospectus had, the March 2007 Offering Registration Statement/Prospectus contained untrue statements of material fact or omitted to state other facts necessary to make the statements made therein not misleading and was not prepared in accordance with applicable SEC rules and regulations. Specifically, describing the Company's "Competitive Strengths," the March 2007 Offering Registration Statement/Prospectus again stated that Bare Escentuals enjoyed an ***"Enthusiastic and loyal consumer base"*** and that its customers ***"exhibit[ed] brand loyalty and enthusiasm for [its] products, promoting sales of [its] products through word-of-mouth referrals and high rates of participation in [its] infomercial continuity program."*** These statements attributing Bare Escentuals' "Competitive Strengths" to its customers' "brand loyalty," "enthusiasm," "word-of-mouth referrals," and "high rates of participation in [its] infomercial continuity program" were false and misleading as the exponential sales racked up in the infomercial program since its commencement in 2001 were attributable in large part to consumers being unwittingly entered as "club members" and subjected to repeated charges to their credit cards for purchases initiated by Bare Escentuals, not them. [Emphasis added.]

41. Similarly, the March 2007 Offering Registration Statement/Prospectus again characterized the Company's sales program as "[m]utually reinforcing distribution channels," and stated that its "multi-channel distribution strategy provide[d] for greater consumer diversity, reach and convenience ***while reinforcing the authenticity and premium image of [its] brands***." Still,

unbeknownst to investors, the Company had been selling its product to distributors who in 2007 had continued reselling it at discount outlets like Costco, significantly diminishing the premium prices Bare Escentuals had previously been able to charge. [Emphasis added.]

42. Concerning the Company's "Growth Strategy," the March 2007 Registration Statement/Prospectus again stated that Bare Escentuals intended to "continue to increase net sales through key ***premium wholesale accounts, such as Sephora and Ulta, home shopping television, and spas and salons.***" However, Costco and the other discounters Bare Escentuals' distributors were selling to, unbeknownst to investors, were not "premium wholesale accounts." Moreover, converse to the March 2007 Offering Registration Statement/Prospectus' statements that Bare Escentuals "intend[ed] to expand [its] base of company-owned boutiques and to grow [its] infomercial and online shopping sales," including ***its express "belie[f that] substantial opportunity exists to open additional domestic boutiques,"*** Bare Escentuals' premium sales opportunities were rapidly diminishing. [Emphasis added.]

43. Further emphasizing the purported value of its brand loyalty, the March 2007 Offering Registration Statement/Prospectus stated the Company planned to "[l]everage [its] strong market position in foundation to cross-sell [its] other products," again stating that "[t]o date, [the Company had] ***demonstrated success in cross-selling [its] non-foundation products*** in channels where [it] interact[ed] directly with consumers, such as in our boutiques and on home shopping television." However, as would later be revealed, Bare Escentuals' cross-selling efforts had failed. [Emphasis added.]

44. Nonetheless, the Underwriter Defendants' selling efforts were again a huge success and in addition to the 12 million shares originally registered, the underwriters exercised their overallotment option and sold a total of 13.8 million shares, bringing in over $476 million in proceeds and receiving over $20 million in fees.

**DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS**

45. The allegations in this section pertain only to the Exchange Act allegations. During the Class Period, Individual Defendants Blodgett and McCormick, as senior executive officers and/or directors of Bare Escentuals, were privy to confidential and proprietary information

concerning Bare Escentuals, its operations, finances, financial condition and present and future business prospects. These Individual Defendants also had access to material adverse non-public information concerning Bare Escentuals, as discussed in detail below. Because of their positions with Bare Escentuals, Individual Defendants Blodgett and McCormick had access to non-public information about its business, finances, products, markets and present and future business prospects via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, these Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

46. Accordingly, Individual Defendants Blodgett and McCormick, along with Bare Escentuals, are liable as direct participants in the wrongs complained of herein under the Exchange Act. In addition, these Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of §20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Bare Escentuals' business.

47. Individual Defendants Blodgett and McCormick, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. These Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, these Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

48. As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the NASDAQ National Market ("NASDAQ") and governed by the

federal securities laws, Individual Defendants Blodgett and McCormick had a duty to promptly disseminate accurate and truthful information with respect to Bare Escentuals' financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Bare Escentuals common stock would be based upon truthful and accurate information. These Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

49. Bare Escentuals and Individual Defendants Blodgett and McCormick are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Bare Escentuals common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Bare Escentuals' business, operations and management and the intrinsic value of Bare Escentuals' common stock; (ii) allowed Defendants Blodgett and McCormick and other Company insiders to collectively sell tens of millions of shares of their personally-held Bare Escentuals common stock for hundreds of millions of dollars in proceeds; and (iii) caused Plaintiff and members of the Class to purchase Bare Escentuals common stock at artificially inflated prices.

50. The Class Period commences on September 28, 2006. On that date, the Company issued a release entitled "Bare Escentuals, Inc. Prices Initial Public Offering of Common Stock," which stated in relevant part:

> Bare Escentuals, Inc. announced today the pricing of its initial public offering of 16,000,000 shares of its common stock at a price to the public of $22.00 per share. All of the shares to be sold in the offering are to be sold by the Company, and the net proceeds of this offering are intended to repay a portion of the Company's outstanding indebtedness and to pay a fee in connection with the termination of the Company's management agreements with Berkshire Partners LLC and JH Partners LLC. Bare Escentuals has granted the underwriters an option to purchase an additional 2,400,000 shares of common stock at the initial public offering price to cover over-allotments, if any. The shares will trade on the Nasdaq Global Select Market under the symbol "BARE."
>
> The offering is being made through an underwriting syndicate led by Goldman, Sachs & Co. as sole book runner for the offering and CIBC World Markets as co-lead manager. Banc of America Securities LLC, Piper Jaffray, Thomas Weisel

Partners LLC, SunTrust Robinson Humphrey and Sanders Morris Harris are acting as co-managers.

51. On November 7, 2006, Bare Escentuals issued a press release announcing its financial results for the third quarter of fiscal 2006, the period ended October 1, 2006. For the quarter, the Company reported net sales of $97.9 million and net income of $8.9 million, or $0.12 per diluted share on approximately 73.5 million shares outstanding. Commenting on the announcement, Defendant Blodgett stated in relevant part:

> We are very pleased with the results achieved during the third quarter of fiscal 2006. ***Our strong performance reflects Bare Escentuals' continued growing brand awareness and the increasing consumer demand for our mineral-based products, and is a testament to the hard work and dedication of our entire organization.*** We at Bare Escentuals are extremely grateful for the loyalty and passion of our Bare Escentuals community, who helped us win our second consecutive Glamour magazine Glammy Award for Best Prestige Foundation.
>
> We are delighted to have successfully completed our initial public offering and we are extremely excited about our prospects for the future. Bare Escentuals pioneered the mineral-based cosmetics category and ***we believe that our leading market position, coupled with our solid relationships with our customers and reinforcing multi-channel distribution strategies, provides us with multiple long-term growth opportunities, both domestically and internationally.*** We plan to continue to selectively broaden our distribution and further increase brand awareness through media and customer-focused events.

With regard to the Company's "guidance" for 2007, the press release stated that:

> For the fourth quarter of fiscal 2006, the Company expects sales to grow in the range of 28% to 33% from the same period last year and diluted earnings per share to be in the range of $0.12 to $0.13 on approximately 92.5 million shares outstanding. The Company expects sales for fiscal 2007 to grow in the range of 18% to 22% compared to fiscal 2006 and diluted earnings per share to be in the range of $0.81 to $0.86 on approximately 92.6 million shares outstanding.\

[Emphasis added.]

52. On February 28, 2007, Bare Escentuals issued a press release announcing its financial results for the fourth quarter and year end of fiscal 2006, ended December 31, 2006. For the quarter, the Company reported net sales of $110.5 million and net income of $16.3 million, or $0.18 per diluted share. Commenting on the announcement, Defendant Blodgett stated in relevant part:

> We are extremely pleased with our performance for the fourth quarter and fiscal 2006. The Bare Escentuals brand continues to flourish ***due to the amazing support of our customers, partners, and employees***. We plan to continue this momentum into 2007 with the launch of innovative new products ***and the expansion of our distribution channels both here and abroad.*** In addition, we'll be launching a

> nationwide tour to connect directly with our customers in order to ensure we're doing everything we can to exceed their expectations.

[Emphasis added.]

With regard to the Company's "guidance" for 2007, the press release stated: "[t]he Company now expects fiscal 2007 diluted earnings per share to be in the range of $0.84 to $0.89 on approximately 92.6 million shares outstanding. This change represents an increase of $0.03 over the prior earnings guidance." Following the press release, Bare Escentuals held a conference call with investors and analysts to discuss the Company's earnings and operations. With regard to the Company's infomercial business, President of Wholesale Sales Diane Miles ("Miles") stated in relevant part:

> ***Our products, our marketing and our merchandising is translating well in all of our channels.*** Our infomercial business ended the year at +33% over '05. Our infomercial continues to be key for creating awareness and educating the customer on the efficiency of our product. In 2006, our infomercial was shown over 540 times a week, which equates to 28,000 times a year. ***At this point, we're happy with our existing level of exposure as it relates to the current frequency of our airing.*** Hence, we expect only a modest growth in our media time for 2007. Our focus, therefore, will be further leverage of our existing brand awareness through a strategic expansion in bricks and mortar.
>
> * * *
>
> ***As with the infomercial, we are very comfortable with our existing on-air presence and thus, we anticipate modest growth in 2007 with emphasis upon growing internet and improving continuity in this channel.***
>
> * * *
>
> Okay, so just on the infomercial, we're growing some and done back end but probably growing back end faster than front end. ***So with the media spend, we're still attracting new customers. And then with the continuity, that's consistently growing as we increase the number of customers on our database.***

[Emphasis added.]

53. On March 13, 2007, Bare Escentuals issued a press release which announced the pricing of a public offering of 12 million shares of its common stock at a price of $34.50 per share. Of these shares, 575,000 shares of common stock were to be sold by Bare Escentuals and 11,425,000 shares of common stock were to be sold by certain stockholders of the Company, Berkshire Partners and JH Partners and certain members of Bare Escentuals' management. In addition, certain of the selling stockholders had granted the underwriters an option to purchase up to an additional 1.8 million shares at the public offering price.

54. On May 2, 2007, Bare Escentuals issued a press release announcing its financial results for the first quarter of fiscal 2007, ended April 1, 2007. For the quarter, the Company

reported net sales of $115.6 million and net income of $20.4 million, or $0.22 per diluted share. Commenting on the Company's performance during the quarter, Defendant Blodgett stated in relevant part:

> The first quarter of 2007 was a very good quarter for the company and a continuation of the strong growth we delivered in 2006. While our sales and earnings speak to our outstanding performance, ***it is the strength of our brand and dedication of our customers that genuinely reflect our success.*** As we expand distribution channels worldwide, we remain committed to providing the highest quality bareMinerals products and customer service, as well as maintaining our brand excellence and industry leadership.

[Emphasis added.]

With regard to the Company's "guidance" for 2007, the press release stated in relevant part:

> Based on stronger-than-expected first quarter results, Bare Escentuals expects fiscal 2007 diluted earnings per share to be in the range of $0.89 to $0.94 on approximately 93.2 million shares outstanding. This change represents an increase of $0.05 over the prior earnings guidance. The Company continues to anticipate that earnings will be weighted toward the second half of fiscal 2007.

55. Following the press release, Bare Escentuals and other insiders held a conference call with investors and analysts to discuss the Company's earnings and operations. With regard to the Company's infomercial business, Defendant Blodgett stated in relevant part:

> We are also very excited to announce that we are launching our fifth bareMinerals infomercial this month. For the past five years the infomercial has been a key channel for us to market, educate, and acquire customers and we have taken our collective learnings to produce our highest quality infomercial to date.
>
> We believe this latest edition better demonstrates the connection we have with our customers and the contagious excitement surrounding Bare Escentuals.
>
> It includes some terrific footage of in-store events at our boutiques and at our prestige partners such as Sephora. And the testimonials manage to get better and better as we continue to use the voice of our customers to help educate and generate brand awareness.
>
> * * * *
>
> Lori Scherwin - Goldman Sachs – Analyst
>
> And then just lastly, you mentioned a change in the infomercial and I was just curious, Leslie, what you've seen in the last four times you upgraded the infomercial. Did it really result in an up tick in sales or was it just sort of reenergizing the media?
>
> Leslie Blodgett - Bare Escentuals Inc. – CEO
>
> Yes, we do see an upside in sales and every time we do a new infomercial it's a completely different looking show from many aspects. And the offer changes as well.

> So even people, I believe, who bought into the other one might want to try the new offer as well.
>
> And, yes, we've included RareMinerals as a free gift in this infomercial too and that's a great value and a great way to sample our new exciting night treatment.

56. On June 5, 2007, Bare Escentuals issued a press release announcing that it was reaffirming its fiscal year 2007 guidance and that the Company was anticipating full year fiscal 2007 diluted earnings to be between $0.89 and $0.94 per share. In addition, Bare Escentuals provided quarterly guidance for the second quarter of fiscal 2007, stating that for its second fiscal quarter ending June 30, 2007, "the Company anticipates fully diluted earnings to be between $0.20 and $0.22 per share." "For the second quarter of fiscal 2007, total sales growth versus the prior year is expected to be in the range of 27% to 30% ***as the Company continues to experience strong consumer demand for its products.***" "On a channel basis, year-over-year sales growth for the second quarter of fiscal 2007 is expected to be in line with first quarter growth rates, with the exception of the Infomercial channel which is expected to be flat relative to prior year." "The Company continues to expect modest growth in infomercial sales in fiscal 2007." [Emphasis added.]

57. On June 13, 2007, Bare Escentuals issued a press release announcing the "pricing of a public offering of 8 million more shares of its common stock at a price of $36.50 per share. Of these shares, 100,000 shares of common stock were to be sold by Bare Escentuals and 7.9 million shares were to be sold by certain stockholders of the Company, including funds affiliated with Berkshire Partners and JH Partners and certain members of Bare Escentuals' management. In addition, certain of the selling stockholders had granted the underwriters an option to purchase up to an additional 1.2 million shares at the public offering price. In connection with the offering, the Company filed and disseminated a registration statement, which contained false but positive statements about the Company. In the offering completed on June 22, 2007, certain insiders sold millions of dollars worth of Bare Escentuals stock, including Blodgett who sold 500,000 shares for $17.9 million in proceeds and Jones, managing director of Berkshire Partners, who sold 3.9 million shares for $139 million in proceeds.

58. On August 1, 2007, the Company issued a release entitled "Bare Escentuals, Inc. Reports Second Quarter Fiscal 2007 Results - Second Quarter Sales Increase 29% and Net Income

Improves 93%," which also quoted Blodgett as stating that Bare Escentuals' "performance in the second quarter demonstrates the strength and breadth of our multi-channel business model," that the Company "achieved sales growth of 29% as [it] developed more points of distribution and satisfied the growing consumer demand for our products worldwide," and that Bare Escentuals and its management were "excited about [its] prospects and believe[d] that Bare Escentuals [was] well-positioned to continue to build upon [its] market leadership and brand excellence." As to "Guidance," the release stated that "Bare Escentuals [was] reaffirming its previously issued fiscal 2007 guidance of diluted earnings per share in the range of $0.89 to $0.94 on approximately 93.2 million shares outstanding." Though one of Bare Escentuals' newest infomercial had clearly underperformed, during the conference call later that day, Blodgett told investors "[o]ur other retail and wholesale channels performed ahead of expectations as we continue to be the leader in mineral-based cosmetics."

59. On October 31, 2007, the Company issued a release entitled "Bare Escentuals, Inc. Reports Third Quarter Fiscal 2007 Results - Third Quarter Sales Increase 29% and Net Income Improves 131%," which quoted Blodgett as stating the Company's "third quarter marked another quarter of strong sales growth and increased profitability," that Bare Escentuals' "strong financial performance reflect[ed its] continued ability to increase brand awareness, execute alongside [its] retail partners and expand [its] points of presence both domestically and abroad," and that as the Company and its executives "look[ed] to [its] next stage of growth, [they] remain[ed] committed to our multi-channel distribution model to educate consumers of the benefits of mineral-based makeup and extend the reach of the Bare Escentuals brand worldwide." As to "Guidance," the release stated Bare Escentuals was "affirming its fiscal 2007 diluted earnings per share guidance of a range of $0.89 to $0.94 on approximately 93.2 million shares outstanding."

60. On November 29, 2007, Bare Escentuals issued a release reiterating fiscal 2007 and fiscal 2008 guidance, stating in relevant part that: "Bare Escentuals [was] reiterating the Company's previously issued fiscal 2007 diluted earnings per share guidance of a range of $0.89 to $0.94 on approximately 93.2 million shares outstanding and its fiscal 2008 diluted earnings per share guidance of a range of $1.13 to $1.18."

61. On January 30, 2008, the Company issued a release entitled "Bare Escentuals, Inc. Named Hottest Prestige Makeup Brand of 2007," which stated that "Bare Escentuals, Inc., the makers of bareMinerals(R), has been named Hottest Prestige Makeup Brand of 2007 based on a consumer survey conducted by The NPD Group, Inc., a leading provider of consumer and retail market research information." The Company's release stated in relevant part:

> "We are particularly proud of the awards voted on by consumers because ***they validate that our brand and our products continue to be loved and adopted by consumers,***" said Leslie Blodgett, Chief Executive Officer. ***"This award is another indication that our loyal customer base continues to grow stronger."***
>
> This award builds on the positive momentum established in 2007 when the bareMinerals(R) brand received over 20 industry awards, the majority of which were consumer-voted. This most recent achievement marks the third consumer-voted award announced in 2008 for the bareMinerals(R) brand, following the Reader's Choice Award for Best Foundation in Teen Vogue Magazine and the Reader's Choice Award for World's Best Foundation in Elle Magazine.

[Emphasis added.]

62. On February 4, 2008, the Company issued a release entitled "Bare Escentuals, Inc. Expands its RareMinerals(TM) Line with Two New Mineral Skincare Products," which stated in relevant part:

> Bare Escentuals, Inc., the creators of bareMinerals(R), the #1 mineral based makeup brand in the US, announces the launch of two new mineral-based skincare products under the RareMinerals(TM) product line, offering consumers a whole new approach to skincare. The two new products, Renew & Reveal Facial Cleanser and Blemish Therapy, augment the RareMinerals(TM) skincare product line offering natural, mineral-based alternatives to traditional cleanser and acne treatment products.
>
> "We are extremely proud to have extended our leadership in mineral cosmetics to mineral skincare," said Jim Taschetta, Chief Marketing Officer. "Just as we created the mineral cosmetics category, we are focused on developing and leading the mineral skincare market. The customer response to our RareMinerals(TM) product line has been terrific, and we look forward to expanding the line based on their feedback."
>
> * * *
>
> The new products join the existing RareMinerals(TM) Skin Revival Treatment, a mineral-based nighttime treatment that was launched in 2006. Initially launched on QVC, these products will roll out to expanded distribution in the first half of 2008 including Bare Escentuals Boutiques and website, Sephora, Ulta, domestic Spas, and select Nordstrom and Macy's.

63. On February 26, 2008, the Company issued a release entitled "Bare Escentuals, Inc. Reports Fourth Quarter and Full Year Fiscal 2007 Results - Fourth Quarter Sales Increase 31% and

Net Income Expands 65%," which quoted Blodgett in relevant part stating: "We are very pleased with our fourth quarter financial results as we experienced continued strong brand momentum," ***"We attribute our performance to the great efforts put forth by our retail partners, suppliers, employees and, of course, the loyal community of Bare Escentuals customers,"*** and "We intend to continue to build upon this momentum in 2008 by expanding our product offering and by increasing access to Bare Escentuals products both here and abroad." As to "Guidance," the Company's release stated: "For fiscal 2008, the Company continues to expect sales to grow in the range of 20% to 25% compared to fiscal year 2007 and diluted earnings per share to be in the range of $1.13 to $1.18." [Emphasis added.]

64. On May 1, 2008, the Company issued a release entitled Bare Escentuals, Inc. Reports First Quarter Fiscal 2008 Results - First Quarter Sales Increase 21% and Net Income Expands 26%," which quoted Blodgett as stating: "We are pleased with our strong start to 2008 which reflects a continuation of the positive brand momentum experienced in 2007," and ***"We are on track to significantly expand our points of presence domestically and internationally, including our recent launch at Selfridges in London, our first department store in the United Kingdom.*** At the same time, we're excited about our new business initiatives, including the growth of our mineral skincare line, RareMinerals." As to "Guidance," the release stated that "For fiscal 2008, the Company continues to expect sales to grow in the range of 20% to 25% compared to fiscal year 2007 and diluted earnings per share to be in the range of $1.13 to $1.18 on approximately 93.8 million shares outstanding." [Emphasis added.]

65. On July 30, 2008, the Company issued a release entitled "Bare Escentuals, Inc. Reports Second Quarter Fiscal 2008 Results - Second Quarter Net Income Grows 22%," which quoted Blodgett in relevant part stating that "We are pleased with our overall performance in the quarter," "The strength of the Bare Escentuals brand helped us to extend our leading market share in face makeup, and we continue to make strides in the eye, lip, and skincare categories," and that "While we remain mindful of trends surrounding consumer spending and are thus taking a more conservative view towards sales growth, ***we continue to have confidence in our ability to expand our product offering, develop more points of distribution and deliver earnings in line with our***

***prior expectations.***" As to "Guidance," the release stated that "[f]or fiscal 2008, the Company now expects sales growth to be in the range of 15% to 20% compared to the prior year." However, the Company maintained its fiscal 2008 guidance, stating it "continue[d] to expect diluted earnings per share for fiscal 2008 to be in the range of $1.13 to $1.18," with Blodgett professing confidence the Company would be able to expand the number of products and distribution points. [Emphasis added.]

66. Throughout the Class Period, Bare Escentuals made filings with the SEC such as Form 10-Ks, 10-Qs and other filings. The Company's Class Period statement referenced herein at ¶¶45-65, along with its SEC filings, contained numerous positive but false statements about the Company's business, including failing to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them:

(a) that the Company's infomercial business was not performing according to internal expectations and would need to be substantially revamped;

(b) that the Company's new infomercial had led to an immediate decrease in sales and was not performing to internal expectations;

(c) that the Company's growth rate would be slowing from historical growth rates;

(d) that Bare Escentuals' inventory levels were increasing;

(e) that the Company was experiencing significant decreases in its sales through TV marketer QVC, which accounted for approximately one-third of the Company's Class Period sales, due to cutting the number of QVC advertising hours;

(f) that Bare Escentuals' clientele was lower-income and faced more economic exposure to rising gasoline prices and unemployment;

(g) that initial concentration of selling through QVC, Sephora, Ulta, infomercial and its own boutiques allowed Bare Escentuals to build its revenues without having to compete with the industry's major players directly, while also putting its products in faster-growing outlets, but that as the business reached a more substantial size, it had to turn to the bigger distribution potential

offered by department stores as well, where it could not command the price premiums it obtained in more insular markets;

(h) that the Company's expansion outside of North American markets would fail because QVC-type cable sales programs could not generate some of the volume of sales outside of North America;

(i) that the Company had been unable to leverage its brand to cross-sell other products;

(j) that customers were unwilling to continue making "club" purchases whereby they were exposed to having unwanted shipments sent and billed to their credit cards; and

(k) that sales to distributors, who in turn were selling to discounters like Costco, were cannibalizing Bare Escentuals' premium sales.

67. Beginning on November 26, 2007, the Company issued a series of corrective disclosures which had the effect of removing some but not all of the inflation in Bare Escentuals' stock price, including:

(a) On June 5, 2007, the Company disclosed that one of its infomercials had not performed up to expectations, causing the Company's stock price to plunge more than 40% to less than $25 per share;

(b) On August 1, 2007, the Company told investors sales from infomercials might fall as much as 10% in the second half of 2007, causing the Company's stock to tumble more than 12% on August 2, 2007;

(c) On November 26, 2007 the Company disclosed that Diane Miles, President of Wholesale and International Sales at Bare Escentuals had suddenly resigned, causing the Company's stock price to plummet by $2.14 per share, or 9.2%, to $21.03; and

(d) On July 31, 2008, the Company reduced its fiscal guidance from 20-25% to 15-20%, causing the Company's stock price to plunge over 30%, or by $5.39, to close at $11.54 per share.

68. Finally, after the close of trading on October 30, 2008, the Company announced its financial results for the third fiscal quarter and nine months ended September 28, 2008, including

reporting that net sales for the third quarter of fiscal 2008 were $130.2 million, net income was $22.9 million, or $0.25 per diluted share, and disclosing that for the nine months ended September 28, 2008, net sales had increased only 12% to $409.1 million from $366.4 million in the same period in fiscal 2007. In addition to missing its own estimates, the Company cut its fill-year forecast and announced new strategic initiatives. Specifically, Blodgett admitted "....we recognize that we can do things better," and that the Company had "recently [taken] actions aimed at rationalizing the operating and cost structure of the Company." As to "Guidance," the release disclosed that Bare Escentuals "now expect[ed] sales and earnings growth for fiscal 2008 of approximately 10% compared to the prior year," and that "[i]ncluded in the fiscal 2008 guidance [was] approximately $0.01 to $0.02 per diluted share of one-time items associated with the Company's strategic restructuring in the fourth quarter."

69. On this news, the Company's stock price plummeted 36% to a new lifetime low of $4.20 per share as analysts slashed Bare Escentuals' stock ratings, citing management's decision to lower prices, broaden product offerings and increase marketing spending. "Management's plan to lower overall pricing ... could hurt brand exclusivity and aspirational appeal over the long run, a critical factor in the prestige cosmetics industry," analyst Rommel Dionisio said in a note to clients. Moreover, increasing marketing spending would not only hurt operating margins but could prove futile against companies like Estée Lauder, L'Oreal, and "other deeper-pocketed competitors who can far outspend Bare Escentuals," Dionisio said. The analyst was also dismissive of the Company's attempts to broaden its offerings into related cosmetics categories, saying the Company had tried and failed with similar strategies in the past.

**LOSS CAUSATION/ECONOMIC LOSS AS TO THE EXCHANGE ACT CLAIMS ONLY**

70. During the Class Period, as detailed herein, Bare Escentuals, Blodgett and McCormick engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Bare Escentuals common stock and operated as a fraud or deceit on Class Period purchasers of Bare Escentuals common stock by failing to disclose to investors that the Company was experiencing weakness in its infomercial business and related sales and operational

problems. When these Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Bare Escentuals common stock fell precipitously as the prior artificial inflation came out. As a result of their purchases of Bare Escentuals common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

71. Defendants Bare Escentuals', Blodgett's and McCormick's false and misleading statements had the intended effect and caused Bare Escentuals common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $42.99 per share on May 30, 2007. By failing to disclose to investors that the Company was experiencing weakness in its infomercial business and related sales and operational defects and difficulties, these Defendants presented a misleading picture of Bare Escentuals' business and prospects.

72. As a direct result of information disclosed on June 5, 2007, August 1, 2007, October 31, 2007, November 26, 2007, July 30, 2008 and October 30, 2008, the price of Bare Escentuals common stock fell precipitously. These drops removed the inflation from the price of Bare Escentuals common stock, causing real economic loss to investors who had purchased Bare Escentuals common stock during the Class Period.

73. These declines in the price of Bare Escentuals common stock after these disclosures came to light were a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the price decline in Bare Escentuals common stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to Defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the prices of Bare Escentuals common stock and the subsequent significant decline in the value of Bare Escentuals common stock when these Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## CLASS ACTION ALLEGATIONS

74. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired the Company's common stock pursuant or traceable to the Company's false and misleading Registration Statements for the IPO and the March 2007 Offering or during the September 28, 2006 to October 31, 2008 Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

75. The members of the Class are so numerous that joinder of all members is impracticable. The Company's common stock was actively traded on the Nasdaq National Market. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Bare Escentuals or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

76. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

77. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

78. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are: (i) whether the Securities Act and the Exchange Act were violated by Defendants' acts as alleged herein; (ii) whether statements made by Defendants to the investing public in the IPO and March 2007 Offering Registration Statement misrepresented material facts about the business, operations and management of Bare Escentuals; (iii) whether statements made by Defendants Bare Escentuals, Blodgett and McCormick to the investing public

during the Class Period misrepresented material facts about the business and operations of Bare Escentuals; (iv) whether the price of Bare Escentuals common stock was artificially inflated during the Class Period; and (v) to what extent the members of the Class have sustained damages and the proper measure of damages.

79. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**COUNT I**

**Violations of Section 11 of the Securities Act Against All Defendants**

80. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein. For purposes of this Count, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act.

81. This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

82. The IPO and March 2007 Offering Registration Statements were false and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

83. Bare Escentuals is the registrant for the IPO and March 2007 Offering. As issuer of the shares, Bare Escentuals is strictly liable to Plaintiff and the Class for the misstatements and omissions.

84. The Individual Defendants named in this Count were responsible for the contents and dissemination of the Registration Statement. Each of the Individual Defendants named in this Count

signed or authorized the signing of the IPO and March 2007 Offering Registration Statements or were identified in the Prospectus.

85. The Underwriter Defendants named herein were responsible for the contents and dissemination of the IPO and March 2007 Offering Registration Statements.

86. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the IPO and March 2007 Offering Registration Statements were true and without omissions of any material facts and were not misleading.

87. By reason of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, §11 of the Securities Act.

88. Plaintiff acquired Bare Escentuals common stock pursuant and/or traceable to the IPO and March 2007 Offering Registration Statements.

89. Plaintiff and the Class have sustained damages. At the time of their purchases of the Company's common stock, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts. Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based and the time Plaintiff filed this complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this complaint.

**COUNT II**

**Violations of Section 12(a)(2) of the Securities Act Against Defendants Bare Escentuals, Blodgett, Ottinger, Senk and the Underwriter Defendants**

90. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein. For purposes of this Count, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act.

91. By means of the defective Prospectuses, the Defendants named herein assisted in the sale of shares of the Company's common stock to Plaintiff and other members of the Class.

92. The Prospectuses contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants named herein owed Plaintiff and the other members of the Class who purchased the Company's common stock pursuant to the Prospectuses the duty to make a reasonable and diligent investigation of the statements contained in the Prospectuses to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. These Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectuses as set forth above.

93. Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectuses at the time Plaintiff acquired the Company's common stock.

94. By reason of the conduct alleged herein, these Defendants violated §12(a)(2) of the Securities Act. As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased the Company's common stock pursuant to the Prospectuses sustained substantial damages in connection with their purchases of the common stock. Accordingly, Plaintiff and the other members of the Class who hold such shares have the right to rescind and recover the consideration paid for their shares, and hereby tender their shares to the Defendants sued herein. Class members who have sold their shares seek damages to the extent permitted by law.

**COUNT III**

**Violations of Section 15 of the Securities Act Against the Individual Defendants**

95. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein. For purposes of this Count, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act.

96. This Count is brought pursuant to §15 of the Securities Act against the Individual Defendants.

97. Each of the Individual Defendants was a control person of Bare Escentuals by virtue of his or her position as a director, senior officer and/or major shareholders of Bare Escentuals which allowed each of these Defendants to exercise control over Bare Escentuals and its operations.

98. Each of the Individual Defendants was a culpable participant in the violations of §11 of the Securities Act alleged in the Count above, based on their having signed or authorized the signing of the Registration Statement and/or having otherwise participated in the process which allowed the IPO and the March 2007 Offering to be successfully completed.

**COUNT IV**

**Violation of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against Defendants Bare Escentuals, Blodgett and McCormick**

99. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

100. During the Class Period, these Defendants disseminated or approved the materially false and misleading statements specified above in ¶¶45-65, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

101. These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

102. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Bare Escentuals common stock. Plaintiff and the Class would not have purchased Bare Escentuals common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by these Defendants' misleading statements.

103. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Bare Escentuals common stock during the Class Period.

**COUNT V**

**Violation of §20(a) of the Exchange Act Against Individual Defendants Blodgett and McCormick**

104. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

105. Individual Defendants Blodgett and McCormick acted as controlling persons of Bare Escentuals within the meaning of §20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of Bare Escentuals, and their ownership of Bare Escentuals stock, these Defendants had the power and authority to cause Bare Escentuals to engage in the wrongful conduct complained of herein. By reason of such conduct, these Defendants are liable pursuant to §20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action and certifying Plaintiff as a class representative;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D. Awarding rescission or a rescissory measure of damages; and

E. Such equitable/injunctive or other relief as deemed appropriate by the Court.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED: August 25, 2009

SCOTT+SCOTT LLP
ARTHUR L. SHINGLER III
MARY K. BLASY

ARTHUR L. SHINGLER III

600 B Street, Suite 1500
San Diego, CA 92101
Telephone: 619/233-4565
619/233-0508 (fax)

SCOTT+SCOTT LLP
DAVID R. SCOTT
108 Norwich Avenue
Colchester, CT 06415
Telephone: 860/537-3818
860/537-4432 (fax)

Counsel for Plaintiff

**CERTIFICATION PURSUANT TO**
**THE FEDERAL SECURITIES LAWS**

On behalf of the Westmoreland Employees' Retirement System ("Westmoreland"), I hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Secretary for Westmoreland. I have reviewed the complaint in this case and authorize Scott + Scott LLP to file a complaint on behalf of Westmoreland in this matter.

2. Westmoreland did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Westmoreland is willing to serve as a lead plaintiff and representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary. Westmoreland fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class.

4. Westmoreland's transactions in **Bare Escentuals Inc. (BARE)** securities that are the subject of this action are set forth in the chart attached hereto.

5. Westmoreland has not sought to serve and was not appointed as a lead plaintiff and representative party on behalf of a class in any actions under the federal securities laws filed during the three-year period preceding the date of this Certification.

6. Westmoreland will not accept any payment for serving as a representative party on behalf of the Class beyond Westmoreland's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24TH day of August, 2009.

Carmen Pedicone, Secretary
On behalf of the Westmoreland County
Employees Retirement System

**WESTMORELAND EMPLOYEES' RETIREMENT SYSTEM**

**BARE ESCENTUALS INC. PLAINTIFF CERTIFICATION (ATTACHMENT)**

***Transactions in Bare Escentuals Inc. Common Stock During Class Period of November 7, 2006 – November 26, 2007***

| Trade Date | Transaction | Number of Shares | Price Per Share |
|---|---|---|---|
| 11/08/06 | Buy | 100 | $28.9103 |
| 11/28/06 | Buy | 100 | $29.9010 |
| 03/13/07 | Buy | 800 | $34.5000 |
| 04/17/07 | Buy | 100 | $39.4650 |
| 04/17/07 | Buy | 400 | $39.3634 |
| 06/27/07 | Buy | 310 | $35.0000 |
| 06/27/07 | Buy | 540 | $34.9889 |
| 10/04/07 | Buy | 500 | $26.4000 |
| 10/05/07 | Buy | 840 | $26.1406 |
| 10/05/07 | Buy | 310 | $26.1426 |